```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/3/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
ANGEL RUIZ,                                          :
                                                     :
                              Plaintiff,             :
                                                     :       17-CV-2216 (VEC)
                 -against-                           :
                                                     :       MEMORANDUM
KERATINBAR INC. and 1976 HAIRCARE INC., :             OPINION & ORDER
                                                     :
                                                     :
                              Defendants.            :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiff's counsel, Borrelli & Associates, P.L.L.C. ("Borrelli"), moved to withdraw as counsel of record for Plaintiff Angel Ruiz and to affix a charging lien. For the following reasons, Borrelli's motion is GRANTED, with the amount of the charging lien to be determined pending the final outcome in this case.

## BACKGROUND

On March 27, 2017, Plaintiff, then *pro se*, commenced this action against his former employer, Defendant Keratin Bar, Inc. ("Keratin Bar"), bringing claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq. See* Dkt. 2. Plaintiff, a hairdresser, alleges that Keratin Bar violated Title VII and the ADA by discriminating against him due to his sex and sexual orientation and by failing to accommodate his disability, Celiac Sprue. *See* Second Am. Compl. ("SAC") ¶¶ 1–5, Dkt. 98. After Keratin Bar filed a motion to dismiss the Complaint on July 3, 2017, *see* Notice of Mot., Dkt. 10, Plaintiff retained Borrelli on a contingency fee basis to represent him. *See* Declaration of Michael J. Borrelli ("Borrelli Decl.") ¶ 5, Dkt. 153; Retainer

Agreement, Dkt. 153-1.  Borrelli's attorneys noted their appearances on August 25, 2017.  Dkt. 15; Dkt. 16; Dkt. 17.

Over the ensuing three years, this case wound its way through the stages of litigation, and Borrelli served as counsel to Plaintiff throughout.  Shortly after Borrelli commenced its representation, Plaintiff filed the Amended Complaint, adding several individual defendants as well as claims under the New York City Human Rights Law ("NYCHRL").  *See* Am. Compl., Dkt. 26; Borrelli Decl. ¶ 6.  On April 27, 2018, the Court granted in part then-Defendants' motion to dismiss, dismissing the NYCHRL claims and all claims against the individual defendants.  *See* Order, Dkt. 50.  The parties completed discovery by November 2018, Borrelli Decl. ¶ 9, after which Keratin Bar filed a motion for summary judgment, *see* Corrected Notice of Mot., Dkt. 76.  Along with his opposition to Keratin Bar's motion for summary judgment, Plaintiff filed a cross-motion to amend the complaint and join a new party.  Notice of Cross-Mot., Dkt. 85.  On July 1, 2019, the Court denied Keratin Bar's motion for summary judgment and granted Plaintiff's cross-motion to amend the complaint to add 1976 Haircare Inc. as a Defendant.  *See* Order, Dkt. 97.

After Plaintiff filed the SAC on July 12, 2019, Dkt. 98, the parties filed their motions *in limine*; the Court granted Plaintiff's motion *in limine* and granted in part and denied in part Defendants' motion *in limine*.  *See* Order, Dkt. 117.  Before proceeding to trial, the Court ordered the parties to participate in the Court-annexed Mediation Program, *see id.*, but the parties were unable to settle, *see* Borrelli Decl. ¶ 19.  Although the parties had filed all pretrial submissions by March 2020, the Court was forced to adjourn the trial *sine die* in light of the ongoing COVID-19 pandemic.  *See* Borrelli Decl. ¶ 20; Order, Dkt. 139.  In a last-ditch effort to settle this case while further proceedings were stayed, the parties participated in a settlement

conference before Magistrate Judge Fox on July 14, 2020, but, again, the parties were unable to reach agreement. *See* Order, Dkt. 144; Borrelli Decl. ¶ 22.

On September 17, 2020, Plaintiff called chambers and raised concerns about his relationship with Borrelli. *See* Order, Dkt. 145. In response, the Court held a conference with Plaintiff, Borrelli, and defense counsel to ascertain the nature of Plaintiff's complaints and to advise him of his options, to the extent he no longer wished to be represented by Borrelli. *See id.*; Order, Dkt. 146. After informing the Court of its intention to do so, Borrelli filed a motion to withdraw as counsel of record and seeking a charging lien in the amount of $193,638.19. *See* Notice of Mot., Dkt. 152. In support of its motion, Borrelli submitted the Declaration of Michael J. Borrelli, appended to which are a copy of Plaintiff's retainer agreement with Borrelli and Borrelli's billing and expense records. *See* Borrelli Decl. Plaintiff filed two letters, purportedly in response to Borrelli's motion, which at times appear to oppose Borrelli's attempt to withdraw while simultaneously expressing distrust of and displeasure with Borrelli. *See* Dkt. 156; Dkt. 157.

## DISCUSSION

### I. Motion to Withdraw as Counsel of Record

Pursuant to Local Civil Rule 1.4, "[a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order." S.D.N.Y. Local R. 1.4. Further, a court may grant such an order "only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement." *Id.* Courts within this circuit have found "satisfactory reasons" to include "a client's lack of cooperation—including lack of communication—with counsel, and the existence of an irreconcilable conflict between attorney and client." *Naguib v. Pub. Health Sols.*, No. 12-CV-2561, 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014) (quoting *Diarama Trading*

*Co. v. J. Walter Thompson U.S.A.*, No. 01-CIV-2950, 2005 WL 1963945, at *1 (S.D.N.Y. Aug. 15, 2005)). Similarly, "[i]t is well-settled that a lawyer may seek to withdraw when the client 'renders it unreasonably difficult for the lawyer to carry out [such] employment effectively.'" *United States v. Lawrence Aviation Indus.*, No. 06-CV-4818, 2011 WL 601415, at *1 (E.D.N.Y. Feb. 11, 2011) (quoting *Stephen Eldridge Realty Corp. v. Green*, 174 A.D.2d 564, 566 (2d Dep't 1991)); *see also* N.Y. R. Pro. Conduct 1.16(c)(7) (providing that a lawyer may withdraw from representing a client when "the client fails to cooperate in the representation or otherwise renders the representation unreasonably difficult for the lawyer to carry out employment effectively"). To the extent irreconcilable differences exist between attorney and client, even in instances in which the client would prefer the attorney to continue his or her representation, courts may still permit counsel to withdraw. *See, e.g.*, *Marciano v. DCH Auto Grp.*, No. 11-CV-9635, 2016 WL 11703590, at *2 (S.D.N.Y. Feb. 2, 2016) (permitting attorney to withdraw over client's objection due to "complete rupture" in attorney-client relationship); *Benvenisti v. City of New York*, No. 04-CV-3166, 2006 WL 44039, at *1 (S.D.N.Y. Jan 6, 2006) ("Although [the client] opposes the application to withdraw it is clear that the attorney-client relationship has broken down, and that the attorney and client lack a certain amount of trust in each other. Under these conditions a termination of the relationship would be in the best interest of both."); *McGuire v. Wilson*, 735 F. Supp. 83, 85 (S.D.N.Y. 1990) (finding that attorney "cannot be expected to continue to represent" client when client's own submissions demonstrate "lack of trust between counsel and client").

  Here, there is ample evidence from which the Court can conclude that the attorney-client relationship between Plaintiff and Borrelli has completely broken down such that continued representation would be unreasonably difficult if not impossible. The Court therefore readily

finds that "satisfactory reasons" exist justifying Borrelli's withdrawal as counsel of record. As detailed during the September 18, 2020, conference and in Borrelli's and Plaintiff's papers, each accuses the other of conduct that is at best unprofessional and at worst utterly abhorrent.

According to Borrelli, for years Plaintiff has "verbally abused and insulted several employees," and, despite multiple warnings, Plaintiff continues to berate Borrelli attorneys and staff. Borrelli Decl. ¶¶ 24–32. In addition, Plaintiff has allegedly threatened to report Borrelli to this Court and the New York State Bar Association for alleged misconduct and incompetence. *See id.* ¶¶ 26, 32, 37. Finally, Plaintiff has reportedly instructed Borrelli to contact him only via mail, rather than by email or phone, rendering communication between attorney and client exceedingly difficult, especially given the trial-ready posture of this case. *Id.* ¶ 32.

For his part, Plaintiff accuses Borrelli of a variety of wildly inappropriate conduct, including, among other allegations: pressuring him to settle for well-below Borrelli's original estimate of Plaintiff's likely recovery or to otherwise be forced to pay Borrelli's fee, counter to their retainer agreement; negligently and intentionally endangering Plaintiff's life and causing him to suffer significant medical incidents including seizures and near-fatal allergy attacks; and threatening to report Plaintiff to Immigration and Customs Enforcement. *See* Dkt. 156; Dkt. 157; Borrelli Decl. ¶ 28. While the Court is unwilling to credit many of Plaintiff's allegations, the seriousness of these claims depicts an attorney-client relationship wholly beyond repair.

Further, it is unclear the extent to which Plaintiff actually opposes Borrelli's attempt to withdraw. In his letters, Plaintiff notes that he "believe[s] Mr. Borrelli is the most appropriate and qualified to fight for [his] case"; in those same letters, however, Plaintiff expresses his belief that Borrelli is accountable for "millions of dollars" worth of damage that the firm has caused him, noting that "these lawyers are robbing everything from me." Dkt. 157. It is difficult to

reconcile Plaintiff's interest in having Borrelli continue its representation with such statements. In any event, the Court finds that, even if Plaintiff wishes to continue his relationship with Borrelli, granting Borrelli's motion to withdraw is necessary due to the overwhelming proof of a "complete rupture" of the attorney-client relationship. *Marciano*, 2016 WL 11703590, at *2.

## II. Motion for a Charging Lien

### A. Legal Standard

Pursuant to New York statute, a discharged attorney is entitled to a charging lien on any monetary recoveries obtained by the former client in the case to the extent the attorney rendered legal services. *See* N.Y. Judiciary Law § 475 (McKinney 2013) ("From the commencement of an action . . ., the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor . . . ."); *see also Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir. 1998) (providing that N.Y. Judiciary Law § 475 governs attorneys' charging liens in federal courts sitting in New York). "However, it is well-settled that an attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged for cause." *Antonmarchi v. Consol. Edison Co. of N.Y.*, 678 F. Supp. 2d 235, 241 (S.D.N.Y. 2010) (internal quotation marks and alterations omitted) (quoting *Petition of Harley & Browne*, 957 F. Supp. 44, 48 (S.D.N.Y. 1997)). In the event of an attorney's withdrawal, whether to fix a charging lien is a decision that lies solely within the discretion of the Court. *See Joffe v. King & Spalding LLP*, 337 F. Supp. 3d 366, 369 (S.D.N.Y. 2018) (citing *Allstate Ins. Co. v. Nandi*, 258 F. Supp. 2d 309, 311 (S.D.N.Y. 2003)).

While an attorney discharged "for cause" — occasioned by "a significant breach of legal duty" or the like — is not entitled to a charging lien, "[d]ischarge on account of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety

by . . . the lawyer, does not amount to discharge 'for cause.'" *Kovach v. City Univ. of N.Y.*, No. 13-CV-7198, 2015 WL 3540798, at *6 (S.D.N.Y. June 4, 2015) (internal quotation marks and citations omitted).  To establish that an attorney breached a legal duty, "[a] client must show that his former attorney's conduct 'constituted a failure to properly represent his interests.'" *Antonmarchi*, 678 F. Supp. 2d at 241 (quoting *Costello v. Kiaer*, 278 A.D.2d 50, 50 (1st Dep't 2000)).  Courts have found that a discharge for cause occurs in situations in which "the attorney has engaged in some kind of misconduct, has been unreasonably lax in pursuing a client's case, or has otherwise improperly handled the case."  *Garcia v. Teitler*, No. 04-CV-832, 2004 WL 1636982, at *5 (E.D.N.Y. July 22, 2004).  "When counsel is granted leave to withdraw by the court, the discharge is not for cause."  *Katz v. Image Innovations Holdings, Inc.*, No. 06-CIV-3707, 2009 WL 1505174, at *1 (S.D.N.Y. May 27, 2009).

"[A]ttorneys who terminate their representation are still entitled to enforce their charging liens, as long as the attorney does not withdraw without 'good cause' and is not discharged for 'good cause.'"  *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010).  While the "satisfactory reasons" justifying a court's decision to permit an attorney's withdrawal may suffice to establish "good cause" justifying the affixing of a charging lien, some courts have found that the "good cause" required for a court to fix a charging lien entails a higher standard than the "satisfactory reasons" inquiry under Local Civil Rule 1.4.  *See id.* at 268 (collecting cases).  To the extent it finds that "the good cause threshold has been satisfied," however, the Court need not consider whether such a potential distinction is relevant to counsel's motion.  *Id.*; *see also Joffe*, 337 F. Supp. 3d at 369 n.4.

In determining the amount of a charging lien, the Court must consider as the "overriding criterion" that the amount be "fair," as the charging lien is "equitable in nature."  *Sutton v. N.Y.C.*

*Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006). Although New York law provides that an attorney's "right to recover in *quantum meruit* accrues immediately upon discharge," such that courts ordinarily calculate the amount of *quantum meruit* compensation at the time of discharge, the Second Circuit has held that a court does not "necessarily abuse[] its discretion by postponing the determination of the fair and reasonable value of an attorney's services" to avoid unnecessary delay or to the extent a more accurate determinate can be made at a later date. *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263–64 (2d Cir. 2004) (citations omitted).

### B. Application

After reviewing all the evidence in the record and having assessed the credibility of Plaintiff and Borrelli, the Court finds that Borrelli is entitled to a charging lien affixed to Plaintiff's eventual recovery, if any. As an initial matter, because the Court granted its motion to withdraw as attorney of record, Borrelli's discharge is not "for cause." *See Katz*, 2009 WL 1505174, at *1. Further, because Plaintiff has provided no evidence to support his outlandish claims of misconduct by Borrelli, the Court is unable to find that there was a significant breach of a legal duty or significant misconduct committed by Borrelli. On the other hand, because the evidence supports a finding that the attorney-client relationship is permanently broken, the Court finds that good cause exists for Borrelli's withdrawal.

It strains credulity to believe that Borrelli intentionally attempted to harm Plaintiff or intentionally placed him in a situation that would exacerbate his medical issues. *See* Dkt. 156; Dkt. 157. Similarly, the Court can think of no reason why Borrelli would mock its own client or threaten to report him to law enforcement for alleged immigration violations. *See* Dkt. 156; Dkt.

157. Without any proof of such implausible claims, the Court simply cannot afford them any weight.

Plaintiff's claims regarding Borrelli's "threats" to drop his case or hold him liable for its fees if he refused to accept a settlement offer below his preferred payout are also unsubstantiated. Even in a potentially "problematic" contingency-fee-based attorney-client relationship, *see Gisbrecht v. Barnhart*, 535 U.S. 789, 803 (2002), absent more, an attorney's recommendation to settle for a smaller sum than initially expected at the outset of a years-long case does not rise to the level of a breach of a legal duty. Borrelli could reasonably have found that valid reasons — the merits of the case, the demonstrated psychological difficulties Plaintiff experiences when placed in a stressful situation,[1] the possibility that Plaintiff would walk away with nothing after trial, the timing of any possible recovery — rendered a guaranteed, albeit smaller, payout a preferable option for Plaintiff. To the extent Plaintiff disagreed, he was free to seek out counsel that placed a greater value on his case than Borrelli. Ultimately, Borrelli has conducted diligent and meritorious work on Plaintiff's behalf throughout the course of its engagement; Borrelli has briefed and argued successful motions and fended off Defendants' motion for summary judgment, guiding Plaintiff's case to its present trial-ready posture. *See, e.g.*, Dkt. 97; Dkt. 117. That Borrelli drafted and submitted all pretrial filings and stood ready to represent Plaintiff at trial before the present delays occasioned by the COVID-19 pandemic further undercuts any claim by Plaintiff that Borrelli threatened to drop his case or hold him liable for all legal fees if he refused to accept a settlement offer that was lower than originally hoped.

---

[1] For example, the Court granted Plaintiff's request for mediation to occur at a private office rather than at the courthouse to accommodate Plaintiff's concerns that the courthouse would be too stressful an environment for him. *See* Order, Dkt. 117.

This is not to say that Borrelli is entirely without fault for the deterioration of the relationship between attorney and client; in fact, the Court does not doubt that Plaintiff, to whom this case certainly means considerably more than to Borrelli, was not afforded VIP-level treatment by Borrelli. *See, e.g.*, Borrelli Decl. ¶¶ 51–82 (demonstrating that up to seven attorneys at Borrelli have been responsible for Plaintiff's case). Nevertheless, absent evidence that Borrelli was "unreasonably lax in pursuing" Plaintiff's case or otherwise mishandled the case in some material way, Borrelli's failure to prioritize Plaintiff's case to the extent Plaintiff desired does not give rise to the breach of a legal duty. *See Garcia*, 2004 WL 1636982, at *5.

Ultimately, the Court reiterates its finding that there has been a complete and total breakdown of the attorney-client relationship, which, in this case, compels the conclusion that Borrelli had good cause to withdraw. And while the Court is unable to find any support for Plaintiff's allegations, the Court need not look any further than Plaintiff's own letters to bolster Borrelli's claims concerning Plaintiff's behavior. *See, e.g.*, Dkt. 156 ("Every time I hear his voice I lo[]se my temper. I'm sorry I regret what I said."); Dkt. 157 (requesting his complete file from this case to use in a separate action against Borrelli for the "millions of dollars" in damage Borrelli has caused him). As other courts have found, while the client plays the role of "master" in any attorney-client relationship, "that role does not mean that a client may run roughshod over his attorney and engage in inappropriate behavior." *Joffe*, 337 F. Supp. 3d at 370. The role Plaintiff has played in the breakdown of the attorney-client relationship, and the breakdown itself, demonstrate that Borrelli had good cause to withdraw as Plaintiff's attorney of record.

Although Borrelli seeks a charging lien in the amount of $193,638.19, the Court exercises its discretion to defer ruling on the amount of the charging lien until the amount to be recovered

by Plaintiff, if any, has been finally determined.  *See id.* (citing *Raji v. Societe Generale Ams. Sec. LLC,* 15-CV-1144, 2016 U.S. Dist. LEXIS 175919, at *12 (S.D.N.Y. Dec. 19, 2016)).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Borrelli's motion to withdraw as attorney of record and to affix a charging lien on any verdict, settlement, judgment, or final order in this case.  Plaintiff may proceed *pro se*, but the Court encourages Plaintiff to seek new counsel to represent him at trial.  To the extent Plaintiff continues with this action *pro se*, Plaintiff is encouraged to register on the Court's electronic filing system (ECF) so that he may more efficiently receive notice of any orders and submit any necessary filings.  To the extent Plaintiff does not register on ECF, he must submit all filings to the Court's Pro Se Intake Unit.  Plaintiff must also keep the Court informed of his current mailing address.  Plaintiff may access more information on the Pro Se Intake Unit by calling (212) 805-0175 or accessing the website at: https://nysd.uscourts.gov/prose/role-of-the-prose-intake-unit/contact.

The final pretrial conference and trial remain adjourned *sine die* due to the difficulties of conducting a jury trial given the ongoing COVID-19 pandemic.  The parties will be given at least one month notice of their new trial date.  The Court defers ruling on the amount of the lien until such time as the amount to be recovered by Plaintiff, if any, has been finally determined. Borrelli must send a copy of the Court's order to Plaintiff at his mailing address and by email.

Not later than **January 8, 2021**, Plaintiff must either (1) retain new counsel and have that counsel file a notice of appearance; (2) register as a user on ECF; or (3) file a letter through the Pro Se Intake Unit that provides his mailing address.

The Clerk of Court is respectfully requested to terminate the open motion at Dkt. 152.

**SO ORDERED.**

Date: **December 3, 2020**                           **VALERIE CAPRONI**
      **New York, New York**                        **United States District Judge**